RAO ONGARO LLP
Anthony J. Rao (SBN 173512)
  arao@rao-ongaro.com
90 Park Avenue, 18th Floor
New York, NY 10016
Telephone: (212) 455-9286
Facsimile: (212) 297-0005

RAO ONGARO LLP
David R. Ongaro (SBN 154698)
  dongaro@rao-ongaro.com
David R. Burtt (SBN 201220)
  dburtt@rao-ongaro.com
595 Market Street, Suite 610
San Francisco, CA  94105
Telephone: (415) 433-3902
Facsimile: (415) 433-3950

Attorneys for Defendants
DHL EXPRESS (USA), INC.,
DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC.,
DHL INFORMATION SERVICES (AMERICAS), INC.,
DHL SOLUTIONS (USA), INC.,
DANZAS CORPORATION, and
EXEL GLOBAL LOGISTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| TAINA NAPOTO, as an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DHL EXPRESS (USA), INC., an Ohio Corporation; DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC., an Ohio Corporation, DHL INFORMATION SERVICES (AMERICAS), INC., an Ohio Corporation, DHL SOLUTIONS (USA), INC., an Ohio Corporation, DHL GLOBAL FORWARDING, an entity unknown; DANZAS CORPORATION, an Ohio corporation; EXEL GLOBAL LOGISTICS, INC., an New York corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C09-01551 (JSW)<br><br>**AMENDED MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE, MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING SAME**<br><br>**[FED.R.CIV.PROC. 12(B)(6), FED.R.CIV.PROC. 12(F)]**<br><br>Judge: Hon. Jeffrey S. White<br>Date:  July 17, 2009<br>Time:  9:00 A.M.<br>Ctrm:  11, 19th Floor |

1

**AMENDED MOTION**

2      TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT

3  OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

4      Pursuant to the May 18, 2009 Re-Notice of Motion to Dismiss First Amended Class

5  Action Complaint and Motion to Strike, on July 17, 2009 Defendants DHL EXPRESS (USA),

6  INC., DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC., DHL INFORMATION

7  SERVICES (AMERICAS), INC., DHL SOLUTIONS (USA), INC., DANZAS

8  CORPORATION, and EXEL GLOBAL LOGISTICS, INC. (collectively "Defendants") will

9  jointly move and do move: (1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

10  dismissing Plaintiff TAINA NAPOTO's ("Plaintiff") First Amended Class Action Complaint

11  (the "FAC") as against DHL EXPRESS (USA), INC., DHL GLOBAL CUSTOMER

12  SOLUTIONS (USA), INC., DHL INFORMATION SERVICES (AMERICAS), INC., and DHL

13  SOLUTIONS (USA), INC.; and (2) pursuant to Rule 12(f) of the Federal Rules of Civil

14  Procedure, for the entry of an order striking the following portions of the FAC:

15      1.    Paragraph 9 of the FAC: reference to Plaintiff being "jointly employed by
16            DEFENDANTS."

17      2.    Paragraph 21 of the FAC: "At all times herein mentioned, each of said
            DEFENDANTS participated in the doing of the acts hereinafter alleged to have been
18            done by the named DEFENDANTS; and furthermore, the DEFENDANTS, and each
            of them, were the agents, servants and employees of each of the other
19            DEFENDANTS, as well as the agents of all DEFENDANTS, and at all times herein
            mentioned, were acting within the course and scope of said agency and employment."

20      3.    Paragraph 22 of the FAC: "Plaintiff is informed and believes and based thereon
21            alleges that at all times material hereto, each of the DEFENDANTS named herein
            was the joint employer, agent, employer, alter ego and/or joint venturer of, or
22            working in concert with each of the other co-DEFENDANTS and was acting within
            the course and scope of such agency, employment, joint venture, or concerted
23            activity. To the extent said acts, conduct, and omissions were perpetrated by certain
            DEFENDANTS, each of the remaining DEFENDANTS confirmed and ratified said
24            acts, conduct, and omissions of the acting DEFENDANTS."

25      4.    Paragraph 23 of the FAC: "At all times herein mentioned, DEFENDANTS, and each
            of them, were members of, and engaged in, a joint venture, partnership and common
26            enterprise, and acting within the course and scope of, and in pursuance of, said joint
            venture, partnership and common enterprise."

27      5.    Paragraph 46 of Plaintiff's FAC: "DEFENDANTS' wrongful and illegal conduct
28            in failing to comply with Labor Code § 227.3 despite the clear legal obligation to

do so, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff and all members of the class in that DEFENDANTS will continue to violate these California laws, represented by labor statutes, unless specifically ordered to comply with same.  This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law.  Plaintiff has no other adequate remedy at law to ensure future compliance with the California labor laws alleged to have been violated herein."

6.      Plaintiff's FAC, Prayer, pg. 15, ¶ 8: "Upon the Third Cause of Action, for an injunction requiring DEFENDANTS to give notice to persons to whom restitution is owing of the means by which to file for restitution."

The Motion to Dismiss is based on the following grounds: Plaintiff's FAC alleges that "Defendants" failed to timely pay her vested and accrued vacation time when she was terminated, in violation of California Labor Code § 227.3 and § 203, and that "Defendants" failed to keep accurate records regarding the wages earned in pay periods, in violation of California Labor Code § 226.  However, Plaintiff erroneously brings these claims against entities which were never her employer and, therefore, which cannot be held liable under the California Labor Code for such alleged violations.  Therefore, DHL EXPRESS (USA), INC., DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC., DHL INFORMATION SERVICES (AMERICAS), INC., and DHL SOLUTIONS (USA), INC. which are separate and distinct corporate entities from Plaintiff's employer, DANZAS CORPORATION, and former employer EXEL GLOBAL LOGISTICS, INC., are improper parties to this lawsuit, Plaintiff has no standing to sue them, and Plaintiff's claims against these defendants should be dismissed.  Furthermore, dismissal is warranted against DHL GLOBAL FORWARDING, which is only a trade name and, therefore, not subject to being sued in this action.

The Motion to Strike is based on the following grounds: Because DHL EXPRESS (USA), INC., DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC., DHL INFORMATION SERVICES (AMERICAS), INC., and DHL SOLUTIONS (USA), INC. should be dismissed from this lawsuit, Plaintiff's allegations that these entities were her employer under a common enterprise, joint employment, agency, alter ego, joint venture, or any other theory should be stricken.  Additionally, Plaintiff's FAC seeks monetary relief, penalties and injunctive relief.

1   Because she is a former employee of Danzas, she has not alleged facts demonstrating that she

2   realistically is threatened by repetition of the alleged violations.  She also cannot establish that

3   the monetary damages sought are secondary to the injunctive relief sought.  Plaintiff lacks

4   standing to pursue injunctive relief and all references to injunctive relief set forth in the FAC

5   should be stricken.[1]

6          This Motion is based upon this Notice of Motion, the Memorandum of Points and

7   Authorities filed concurrently herewith, the Amended Declaration of Carol Marcus-Stanley

8   ("Marcus-Stanley Decl."), the Declaration of David Grudin ("Grudin Decl."), the Declaration of

9   Andew C. Dippolito ("Dippolito Decl."), the [Proposed] Order, the papers and records on file

10  with this Court, and such other oral and documentary evidence as may be presented to this Court

11  at or before the hearing on this Motion.

12

13

14

15

16

17

18

19

20

21

---

22  [1] On April 15, 2009, Defendants filed a previous motion to dismiss and motion to strike in this action.  On
    May 1, 2009, Plaintiff filed an opposition and an amended complaint.  In light of Plaintiff's decision to
23  file an amended complaint, this Court denied without prejudice as moot Defendants' earlier motion, by
    Order dated March 7, 2009.  In their previous motion to strike, Defendants argued that Plaintiff's
24  Complaint improperly sought to utilize the four-year statute of limitations period of California's Unfair
    Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq*. ("UCL"), to recover penalties reaching back
25  four years, rather than the one or three years allowed under Cal. Lab. Code § 203.  Defendants have not
    made this argument herein, in light of the California Supreme Court's recent decision to accept review of
26  this issue in *Pineda v. Bank of* America, California Supreme Court Case No. S170758.  However,
    Defendants do not waive their right to file another motion regarding penalties and the appropriate statute
27  of limitations after the California Supreme Court renders a decision in *Pineda*.

28

---

**AMENDED MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Table of Authorities...................................................................................ii

I.  INTRODUCTION AND STATEMENT OF FACTS.............................................1

II. ANALYSIS

    A.  Standard for Motion to Dismiss and Motion to Strike.................................2

    B.  The DHL Entities Must Be Dismissed
        Because They Were Not Plaintiff's Employer........................................3

        1.  Plaintiff Has Not Pled Sufficient Facts Supporting Her
            Theories For Holding the DHL Entities Liable as Her Employer...........4

        2.  The DHL Entities Were Not Plaintiff's
            Employer Under Any Theory of Liability.......................................6

            (a)  There Is No Integrated/Common Enterprise..........................7

            (b)  There Is No Alter Ego Liability.......................................11

            (c)  There Is No Agency.....................................................13

            (d)  There Is No Joint Employment.......................................13

            (e)  There Is No Joint Venture/Partnership..............................14

    C.  DHL Global Forwarding is Trade Name Not Subject to Being Sued..............14

    D.  Injunctive Relief Sought in Plaintiff's Complaint Should be Stricken..............15

IV. CONCLUSION..................................................................................15

**TABLE OF AUTHORITIES**

| | Page |
|---|---|
| *American Express Travel Related Servs. Co. v. Berlye,* 202 Ga. App. 358, 414 S.E.2d 499 (1991) | 14 |
| *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825 (1962) | 12 |
| *Bauer v. Pounds,* 61 Conn. App. 29, 762 A.2d 499 (2000) | 14 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) | 2, 4 |
| *Bosley v. Chubb Corp.*, No. Civ.A. 04CV4598, 2005 WL 1334565 (E.D. Pa. June 3, 2005) | 5 |
| *Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) | 3 |
| *Campion v. Northeast Utilities*, 598 F. Supp. 2d 638 (M.D. Pa. 2009) | 5 |
| *County of Riverside v. Loma Linda University* 118 Cal.App.3d 300, 173 Cal.Rptr. 371 (1981) | 14 |
| *Deitz v. Comcast Corp.,* 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) | 15 |
| *EEOC v. Creative Networks, LLC*, No. CV 05-3032-PHX-SMM, 2009 WL 777189 (D. Ariz. Mar. 19, 2009) | 11 |
| *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993) | 9 |
| *Geer v. Cox*, 242 F. Supp. 2d 1009 (D. Kan. 2003) | 3 |
| *Gupta v. Sears, Roebuck and Co.*, Civil Action No. 07-243, 2009 WL 890585 (W.D. Pa. Mar. 26, 2009) | 5 |
| *Hibbs-Rines v. Seagate Technologies, LLC*, No. C 08-05430 SI, 2009 WL 513496 (N.D. Ca. Mar. 2, 2009) | 3, 4 |
| *Jones v. County of Los Angeles,* 99 Cal. App. 4th 1039, 121 Cal. Rptr. 2d 621 (2002) | 13 |
| *Kenny v. Regis Corp.*, No. C 06-07521 CRB, 2008 WL 686710 (N.D .Cal. Mar. 10, 2008) | 6, 7, 8, 9, 10 |
| *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 80 Cal. Rptr. 2d 454 (Cal. Ct. App. 1998) | 6, 9, 13 |
| *Maddock v. KB Homes, Inc.*, No. CV-06-05241 CAS (JTLx), 2007 WL 2221030 (C.D. Cal. Oct. 18, 2007) | 8, 9, 12 |
| *Mayfield v. Sara Lee Corp.*, No. C 04-1588 CW, 2005 WL 88965 (N.D. Ca. Jan. 13, 2005) | 9 |
| *McCaffrey v. Brobeck, Phleger & Harrison, L.L.P,* No. C 03-2082 CW, 2004 WL 345231 (N.D. Ca. Feb. 17, 2004) | 12 |

**Page**

*Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 11 Cal.Rptr.2d 918 (1992)    11

*Mincey v. World Savings Bank*, FSB, C.A. No. 2:07-cv-03762-PMD, 2008 WL    4
3845438 (D.S.C. Aug. 15, 2008)

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)    15

*NEC Electronics Inc. v. Hurt,* 208 Cal.App.3d 772, 256 Cal.Rptr. 441 (1989)    11

*Nelson v. Abraham* 29 Cal.2d 745, 177 P.2d 931 (1947)    14

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ.0613 GBD,    5
2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)

*Papasan v. Allain*, 478 U.S. 265 (1986)    2, 3

*Schumacher v. J.P. Morgan & Co.*, No. 98 C 108, 1999 WL 58554 (N.D. Ill. Feb. 3,    5
1999)

*Snowden v. CheckPoint Check Cashing,* 290 F.3d 631 (4th Cir. 2002)    14

*Tapley v. Lockwood Green Engineers, Inc.,* 502 F.2d 559 (8th Cir. 1974)    3

*United States v. Bestfoods*, 524 U.S. 51 (1998)    6

*Ventura v. BEBO Foods, Inc.*, 595 F. Supp. 2d 77 (D.D.C. 2009)    14

*Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033 (9th Cir. 2006)    15

*Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002)    13

1    **AMENDED MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION AND STATEMENT OF FACTS**

3            In this putative wage and hour class action, Plaintiff TAINA NAPOTO ("Plaintiff")[2], as

4    an individual and on behalf of others similarly situated, seeks to hold several distinct corporate

5    entities liable for the wrongs she claims to have suffered while working at Danzas Corporation

6    ("Danzas") and previously Exel Global Logistics, Inc. ("Exel Global").[3]   However, as separate

7    and distinct corporate entities, DHL Express (USA), Inc. ("Express"), DHL Global Customer

8    Solutions (USA), Inc. ("GCS"), DHL Information Services (Americas), Inc. ("ISA"), and DHL

9    Solutions (USA), Inc. ("SOL") (collectively, the "DHL Entities") were never Plaintiff's

10   employers and, therefore, are improper parties to her lawsuit.  The DHL Entities were not

11   involved in, nor did they exercise any control over, any decision made or any action taken with

12   respect to Plaintiff's employment with Danzas or Exel Global.

13           Consequently, the DHL Entities cannot be held liable for the employment-related claims

14   Plaintiff has asserted – i.e., that Defendants failed to timely pay her vested and accrued vacation

15   time (vacation, personal days, personal holidays, floating holidays, and/or paid time off) when

16   her employment terminated in violation of California Labor Code section 227.3 ("Section

17   227.3") and section 203 ("Section 203"), and that Defendants failed to keep accurate records

18   regarding the wages earned in pay periods in violation of California Labor Code section 226

19   ("Section 226") – as a matter of law, and must be dismissed from this case.  Nor should Plaintiff

20   be permitted to seek certification of a class of current and former employees of the DHL Entities

21   based on these claims.[4]  Additionally, DHL Global Forwarding is only a trade name, and not a

22   _____

23   [2] Although the caption reads "Taina Napoto," Plaintiff has since clarified that this was done in error and
     that the correct spelling of her name is "Amanita Naupoto."
     [3] Prior to Plaintiff becoming a Danzas employee, Exel Global was Plaintiff's sole employer.

24   [4] The FAC seeks to certify: "(a) a class of all current and former employees of DEFENDANTS in
     California at any time from four years prior to the date of the filing of this action through the present who,

25   based on DEFENDANTS' records, had their vested vacation pay (including, but not limited to, personal
     days, personal holidays, floating holidays, and/or paid time off) forfeited and not paid to them; and (b) a

26   class of all former employees of DEFENDANTS in California at any time from four years prior to the
     date of the filing of this action through the present who were not paid their final wages within 72 hours of

27   the date DEFENDANTS' records show their employment ended; and (c) a class of all current and former

28   _____

     Amended Motion To Dismiss/Strike Class Complaint, P's & A's Supporting Same - Case No. C09-01551 (JSW)

1   corporate entity capable of being sued under the California Labor Code, thereby warranting

2   dismissal of DHL Global Forwarding from this action as well.  Finally, because (1) Plaintiff's

3   FAC seeks monetary relief, penalties and injunctive relief; (2) Plaintiff was a *former* employee

4   of Danzas; (3) Plaintiff has not alleged facts demonstrating that she realistically is threatened by

5   repetition of the alleged violations; and (4) Plaintiff cannot establish that the monetary damages

6   sought are secondary to the injunctive relief sought, Plaintiff lacks standing to pursue injunctive

7   relief and all references to injunctive relief set forth in the FAC should be stricken.

8          After filing two complaints, Plaintiff has not pled any facts to support any theory of

9   liability against the DHL Entities.  Plaintiff would be unable to establish that the DHL Entities

10  were her "employer" under any theory of liability even if given a third opportunity to file another

11  complaint.  As such, the DHL Entities should be dismissed with prejudice.  Alternatively, the

12  Court should dismiss the DHL Entities without prejudice and provide Plaintiff with the

13  opportunity to move to rejoin one or more of the DHL Entities in the event she discovers facts

14  supporting her joint employer claims in the future.

15  **II.    ANALYSIS**

16         **A.     Standard for Motion to Dismiss and Motion to Strike**

17         Under Federal Rule of Civil Procedure 12(b)(6), a complaint is properly dismissed for

18  failure to state a claim upon which relief may be granted where – as here – the plaintiff fails "to

19  provide 'grounds' of his 'entitlement to relief' which requires more than labels and conclusions,

20  and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

21  *Twombly*, 550 U.S. 544, 556-57 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

22  Dismissal is warranted if a plaintiff has not pled "enough facts to state a claim to relief that is

23  plausible on its face," and "[f]actual allegations must be enough to raise a right to relief above

24  the speculative level." *Id.*

25

26  employees of DEFENDANTS in California at any time from one year prior to the date of the filing of this
    action through the present who received itemized wage statements/pay check stubs from
27  DEFENDANTS." *FAC*, ¶ 25.

28

1    Under Federal Rule of Civil Procedure 12(f), the court may order stricken from any

2    pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

3    matter. Fed. R. Civ. P. 12(f). A defendant may move to strike language seeking relief that is not

4    recoverable as a matter of law. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal.

5    1996); *Tapley v. Lockwood Green Engineers, Inc.,* 502 F.2d 559, 560 (8th Cir. 1974). The

6    purpose of Rule 12(f) is to "minimize delay, prejudice, and confusion by narrowing the issues for

7    discovery and trial." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1025 (D. Kan. 2003). While the Court

8    must accept as true the pleader's factual allegations when ruling on a motion to strike, a court is

9    "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 468

10   U.S. at 286 (1986); *Hibbs-Rines v. Seagate Technologies, LLC*, No. C 08-05430 SI, 2009 WL

11   513496, at *5 (N.D. Ca. Mar. 2, 2009).

**B.    The DHL Entities Must Be Dismissed Because They Were Not Plaintiff's Employer**

To establish each of her claims against the DHL Entities, Plaintiff must, among other

things, show that each entity was Plaintiff's "employer."[5] Plaintiff cannot deny that her actual

employer was Danzas (and before that, Exel Global).[6] Nevertheless, Plaintiff sues *four other*

separate and distinct corporate entities which never employed her in an attempt to increase the

size of the putative class. Plaintiff has not pled any facts to support any theory of liability

against the DHL Entities despite filing two complaints.

**1.    Plaintiff Has Not Pled Sufficient Facts Supporting Her Theories For Holding the DHL Entities Liable as Her Employer**

---

[5] The California Labor Code subjects only "employers" to liability.

[6] Indeed, in a previous sworn declaration submitted to the Court in opposition to Defendants' earlier motion to dismiss and motion to strike, Plaintiff states that "[p]rior to becoming an employee of DHL, [she] was employed by Exel Global Logistics ("Exel") and Danzas Corporation ("Danzas"), and that she "became an employee of DHL when DHL acquired Exel and Danzas." (Napoto Decl. ¶¶ 3, 4, Docket No. 12.) Plaintiff admits that an actual employment relationship did not exist between her and any of the DHL Entities, and she is seeking to hold "DHL" liable based on nothing more than "DHL's" corporate relationship to Danzas and Exel Global – and a mistaken one at that, as the DHL Entities never acquired Exel and Danzas. DPWN Holdings (USA) Inc. is the Parent to all DHL Entities, Danzas and Exel Global. (Marcus-Stanley Decl. ¶ 7; Dippolito Decl. ¶ 2.)

1    Plaintiff's FAC pleads several theories of liability for imputing liability to the DHL

2    Entities (albeit in nothing more than vague and conclusory terms).  Specifically, Plaintiff alleges

3    she was "jointly employed by DEFENDANTS in California from March 1998 to May 30, 2008"

4    (*FAC*, ¶ 9), and that:

5         Each of the DEFENDANTS named herein was the joint employer, agent,
          employer, alter ego and/or joint venturer or, or working in concern with
6         each of the other co-DEFENDANTS and was acting within the course and
          scope of such agency, employment, joint venture, or concerted activity.
7

8    (*FAC*, ¶ 22.)  Plaintiff further alleges that:

9         DEFENDANTS, and each of them, were members of, and engaged in, a
          joint venture, partnership and common enterprise, and acting within the
10        course and scope of, and in pursuance of, said joint venture, partnership
          and common enterprise.
11

12   (*FAC*, ¶ 23.)

13   These are nothing more than legal conclusions.  Plaintiff's allegations are what at least

14   one federal court has called an improper "kitchen-sink approach" to the task of attempting to

15   hold all the DHL Entities liable for the alleged actions of Danzas or Exel Global.  *See Mincey v.*

16   *World Savings Bank*, FSB, C.A. No. 2:07-cv-03762-PMD, 2008 WL 3845438, at *9 (D.S.C.

17   Aug. 15, 2008) (plaintiff's allegation that each defendant was "the agent, servant, employer, joint

18   venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the

19   remaining [d]efendants" was a "kitchen-sink approach to the task of attempting to hold Golden

20   West and Wachovia liable for actions of WSB" that could not withstand a motion to dismiss.)

21   Plaintiff must set forth in her complaint *some* factual allegations supporting her claim;

22   boilerplate legal conclusions are not enough.  *Twombly,* 550 U.S. at 556-57.

23   This Court recently held that nearly identical allegations are insufficient to satisfy the

24   plaintiff's pleading requirements in a similar context.  In *Hibbs-Rines v. Seagate Technologies,*

25   *LLC*, No. C 08-05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009), plaintiff – who was an

26   employee of i356, a subsidiary of Seagate – brought a class action complaint against both i365

27   and Seagate alleging violations of the California Labor Code.  Plaintiff alleged that i365 and

28

1   Seagate "were the joint employers, parent companies, successor companies, predecessors in

2   interest, affiliates, agents, employers, servants, joint venturers, directors, fiduciaries,

3   representatives, and/or coconspirators of each of the remaining [d]efendants." *Id.* at *5.

4   Defendants made a Rule 12(f) motion to strike, arguing that plaintiff had not adequately alleged

5   that Seagate and i365 were plaintiff's "joint employers," that plaintiff was never an employee of

6   Seagate, and that plaintiff therefore had no standing to sue Seagate. *Id.* In granting defendants'

7   motion to strike plaintiff's joint employment allegations and all allegations as to Seagate, this

8   Court held that "[p]laintiff's joint employer allegations are insufficient because they are legal

9   conclusions, not factual allegations." *Id.* (emphasis in original).[7]

10          The same result is warranted here, especially since Plaintiff has had two opportunities to

11  allege facts supporting her conclusory joint employer allegations. The DHL Entities should be

12  dismissed with prejudice, or they should be dismissed without prejudice and Plaintiff should be

13  given the opportunity to move to rejoin them in the event she discovers facts supporting her joint

14  employer claims. *See Schumacher v. J.P. Morgan & Co.*, No. 98 C 108, 1999 WL 58554, at *2

15  (N.D. Ill. Feb. 3, 1999) (concluding that the party would be dismissed where complaint

16  contained no factual allegations that Morgan Futures and Morgan & Co. had a common unity of

17  business function to be treated as a single employer, but that if the plaintiff discovered

---

18  [7] Federal courts routinely dismiss causes of action against corporate entities that are separate and distinct

19  from the plaintiff's employer in various contexts where – as here – the plaintiff fails to allege any facts showing how they are "joint employers" or an "integrated enterprise." *See, e.g., Gupta v. Sears, Roebuck*

20  *and Co.*, Civil Action No. 07-243, 2009 WL 890585, at *2 (W.D. Pa. Mar. 26, 2009) (motion to dismiss granted where amended complaint did not specifically allege how defendants Sears Holding and Sears

21  were interrelated in order to overcome presumption that Sears Holding is not liable for the conduct of its subsidiaries, and where plaintiff failed to include allegations in support of the claim that Sears, Roebuck

22  and Co. is merely the "alter ego" of Sears Holding, or that the two corporations were a single entity or an "integrated enterprise"); *Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 656 (M.D. Pa. 2009)

23  (granting motion to dismiss where "[o]ther than the conclusory allegation that 'NGS, NU, NU Enterprises and Select are interrelated companies,' [plaintiff] makes no further factual averments from which it could

24  be found that these entities are an integrated enterprise"); *Bosley v. Chubb Corp.*, No. Civ.A. 04CV4598, 2005 WL 1334565, at *5 (E.D. Pa. June 3, 2005) (granting Chubb's motion to dismiss where it asserted

25  that plaintiffs were never employed by Chubb and where plaintiffs failed to allege any facts in support of their inclusion of Chubb as a defendant); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No.

26  03 Civ.0613 GBD, 2004 WL 112948, at *5-6 (S.D.N.Y. Jan. 22, 2004) (holding that plaintiffs' conclusory allegations that Medina and CDSA were "agents" of defendants Andersen and PWC, because

27  they represented themselves as part of defendants, were insufficient to withstand defendants' motion to dismiss).

28

---

information during discovery to support his integrated enterprise claim, the court would "entertain a motion to rejoin [the dismissed party]."). Unlike a single plaintiff case, in a class action, dismissal of improper defendants on the front end will save the parties, the Court, and attorneys substantial time, effort, and money by focusing on the proper defendants who are able to satisfy a judgment against it, if any. Accordingly, because Plaintiff's FAC sets forth no facts supporting her conclusory allegation that the DHL Entities were Plaintiff's employer under any legal theory, her claims against these entities should be dismissed.

### 2. The DHL Entities Were Not Plaintiff's Employer Under Any Theory of Liability

Even if given a third opportunity to replead, Plaintiff would be unable to show that the DHL Entities were her employer under any theory of liability. At the time of her termination, Plaintiff was an employee of Danzas; prior, she was an employee of Exel Global.[8] (Grudin Decl. ¶ 3; Dippolito ¶ 7.) Plaintiff's FAC correctly asserts that the DHL Entities, Danzas, and Exel Global are separate and distinct corporate entities. *FAC,* ¶¶ 10-16. Because corporate entities are presumed to exist separately, "the corporate existence form will be disregarded only when the ends of justice require this result." *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454 (Cal. Ct. App. 1998); *see Kenny v. Regis Corp.*, No. C 06-07521 CRB, 2008 WL 686710, at *4 (N.D .Cal. Mar. 10, 2008). An employee who seeks to hold a corporation liable for the acts or omissions of another corporation on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under California law. *See, e.g., Laird*, 68 Cal. App. 4th at 737, 80 Cal. Rptr. 2d 4545 ("[T]here is a strong presumption that a parent company is not the employer of its subsidiary's employees); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in

---

[8] Plaintiff was first hired by MSAS Global Logistics on March 29, 1999. (Grudin Decl. ¶ 3; Dippolito Decl. ¶ 7.) After MSAS's parent company merged with Exel, Plaintiff became an Exel Global employee sometime in August 2005 and had an Exel cost-center. (Dippolito Decl. ¶ 7.) In July 2006 (after DPWN Holdings (USA), Inc. acquired Exel), Plaintiff became a DHL Danzas Air & Ocean, and later a Danzas Corporation (operating as Global Forwarding) employee. (Grudin Decl. ¶ 3; Dippolito Decl. ¶ 7.)

1   our economic and legal systems that a parent corporation . . . is not liable for the acts of its

2   subsidiaries ").[9]

3       Nevertheless, Plaintiff pleads the following theories for imputing liability to the DHL

4   Entities: (a) integrated/common enterprise; (b) alter ego; (c) agency; (d) joint employment; (e)

5   joint venture; and (f) partnership.  Regardless of the legal theory asserted, the DHL Entities –

6   distinct legal entities that never employed Plaintiff, nor had anything to do with her hire, terms

7   and conditions of employment, termination, or vacation pay – cannot face liability for Plaintiff's

8   claims (or the class she purports to represent) as a matter of law.

9              **(a)    There is No Integrated/Common Enterprise**

10      In determining whether two or more corporations may be treated as a single employer

11  under the "integrated enterprise test," courts consider four factors: (1) interrelation of operations;

12  (2) common management; (3) centralized control of labor relations; and (4) common ownership

13  or financial control.  *Kenny*, 2008 WL 686710, at *4.  It is important to note that none of the

14  DHL Entities are the parent of Danzas or Exel Global.  All Defendants are subsidiaries of

15  DPWN Holdings (USA), Inc.  (Marcus-Stanley Decl. ¶ 7; Dippolito Decl. ¶ 2.)

16      With respect to the first factor ("interrelation of operations"), the DHL Entities do not

17  have sufficient "interrelation of operations" with Danzas or Exel Global to justify liability.

18  Danzas – the entity which employed Plaintiff at her termination – is an owner of the market trade

19  name DHL Global Forwarding and operates under the brand name DHL Global Forwarding.

20  (Marcus-Stanley Decl. ¶ 3; Grudin Decl. ¶ 3; Dippolito Decl. ¶ 7.)  Danzas, Exel Global, and the

21  DHL Entities are separate from each other from a personnel, budgetary, management, and

22  operational standpoint.  (Grudin Del. ¶ 4; Dippolito Decl. ¶ 5; Marcus-Stanley Decl. ¶ 9.)

23  Danzas, Exel Global, and the DHL Entities are separate corporate entities, incorporated at

24  different times.  (*FAC,* ¶¶ 10-16; Marcus-Stanley Decl. ¶ 4.)  Each entity has its own federal

25

26  [9] Although much of the case law in this area involves the situation of a plaintiff seeking to hold a parent company liable for the acts of its subsidiaries, the situation at hand involves separate and distinct corporate entities that have the same parent – in this case, DPWN Holdings (USA), Inc.  Therefore, there should be an even greater presumption against holding non-parent corporate entities liable for the acts of other entities simply by virtue of them sharing a parent.

27

28

1   employer identification number/tax identification number, charter/registration number, articles of

2   incorporation, and bylaws. (Marcus-Stanley Decl. ¶ 6.) Each entity has a separate budget, and

3   revenue and losses are tracked separately. (Marcus-Stanley Decl. ¶ 7; Grudin ¶ 6; Dippolito

4   Decl. ¶ 5.) Each entity has separate bookkeeping, accounts payable and receivable departments,

5   payroll, marketing, and accounting practices. (Marcus-Stanley Decl. ¶ 8.) Each entity has its

6   own employees, procedures, cost centers, management, officers, directors, controls, duties,

7   markets, and roles. (Marcus-Stanley Decl. ¶¶ 7, 9.) There is no overlap between cost centers

8   each of these entities. (Dippolito Decl. ¶ 7.) Danzas operates a separate and distinct business

9   line (i.e., freight (air and ocean) services ) than the other entities, providing different services and

10  maintaining different market shares. (Marcus-Stanley Decl. ¶ 5; Grudin Decl. ¶ 6; Dippolito ¶¶

11  4, 5.)[10]

12      Because the DHL Entities do not exercise any control over the operations of Danzas or

13  Exel Global, this factor weighs in the DHL Entities' favor. *See Kenny*, 2008 WL 686710, at *4

14  (no interrelation of operations where although headquartered in the same business complex, each

15  corporate entity maintained separate offices and management; was separately registered to do

16  business in California; and financial statements were separately maintained); *Maddock v. KB

17  Homes, Inc.*, No. CV-06-05241 CAS (JTLx), 2007 WL 2221030, at *11 (C.D. Cal. Oct. 18,

18  2007) (no interrelation of operations where plaintiff fell short of showing any indication of a

19  heightened level of control than is normal between a parent company and its subsidiary).

20      With respect to the second factor ("common management"), Danzas, Exel Global, and

21  the DHL Entities each have their own leadership, management, officers, directors, and

22  supervisors, all with different reporting structures. (Marcus-Stanley Decl. ¶ 7; Grudin Decl. ¶ 5;

23  Dippolito Decl. ¶ 4.) The Operating Division of DPWN Holdings, Inc. of which Danzas and

24  Exel Global are a part (Global Forwarding/Freight Division) has a separate Chief Executive

25  Officer and Chairman, separate corporate officers, and a separate Board of Directors than the

26  Operating Divisions to which the DHL Entities belong. (Marcus-Stanley Decl. ¶¶ 7, 9; Grudin

27  
28  

---

[10] DHL Express's decision to exit the U.S. domestic express business in early 2009 had no impact on Danzas's business and operations. (Dippolito Decl. ¶ 5.)

1  Decl. ¶ 5; Dippolito Decl. ¶ 4.) *See Kenny*, 2008 WL 686710, at *4 (no integrated enterprise

2  where plaintiff failed to show more common management than would be expected in a normal

3  parent-subsidiary relationship). This factor also weighs in the DHL Entities' favor.

4       To satisfy the third factor ("centralized control of labor relations"), a plaintiff must allege

5  and show that the separate corporate entity sought to be held liable exercised <u>day-to-day control</u>

6  of <u>routine employment matters</u> of the plaintiff's employer. In the *Laird* court's words:

7       The critical question is '[w]hat entity made the final decisions regarding
   employment matters related to the person claiming [wrongdoing]?' A parent's
8  broad general policy statements regarding employment matters are not enough to
   satisfy this prong. To satisfy the control prong, a Parent must control the day-to-
9  day employment decisions of the subsidiary.

10  *Laird*, 68 Cal. App. 4th at 738; *see also Mayfield v. Sara Lee Corp.*, No. C 04-1588 CW, 2005

11  WL 88965, at *3 (N.D. Ca. Jan. 13, 2005) (plaintiff failed to demonstrate that parent controlled

12  the day-to-day human resource functions and employment decisions of the subsidiary); *see also*

13  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362-64 (10th Cir. 1993) (parent corporation not liable as

14  a matter of law because it did not participate in the "routine personnel decisions such as hiring,

15  transferring, promoting, discharge, and disciplining" its subsidiary's employees).[11]

16       In *Maddock*, 2007 WL 2221030, at *11-12, the court denied class certification and

17  concluded that the parent corporation could not face liability for the alleged wage and hour

18  violations of its subsidiaries because it did not: hire or fire its subsidiaries' employees; supervise

19  or control its subsidiaries' employees' schedules and duties; determine the compensation rate for

20  its subsidiaries' employees, or otherwise "exercise[] or enjoy[] the sort of day-to-day control

21  over [its subsidiary's] employment decisions that would satisfy the control prong of the

22  integrated enterprise test." Likewise, in *Kenny*, 2008 WL 686710, at *4, this Court found that

23  the plaintiff failed to meet her burden of showing that Regis exercised day-to-day control over

24  Supercuts' employment decisions in general, or that it exercised any control of Supercuts'

25  decisions with respect to plaintiff where: Supercuts managers set work schedules, implemented

26  [11] An employee handbook mentioning the parent, the parent publicly claiming credit for the subsidiary's
27  activities, eligibility for parent-provided benefits, and the subsidiary's employees coming within the
    parent's equal employment opportunity policies are not enough as a matter of law to establish liability.
28  *Laird*, 68 Cal. App. 4th at 734-35, 738-39.

1   meal and rest periods, and did the hiring and firing; Regis did not control the job duties or

2   working conditions of Supercuts employees, including plaintiff; Supercuts managers counseled

3   employees; the decision to terminate plaintiff was made by Supercuts personnel; and Supercuts

4   personnel determined the rates of pay.[12]   Therefore, plaintiff could not hold Regis liable under

5   the integrated enterprise test as a matter of law.  *Id.*

6          Here, the DHL Entities were not involved in, nor exercised any control over, any decision

7   made or any action taken with respect to Plaintiff's employment with Danzas (or her previous

8   employment with Exel Global).  Danzas, and previously Exel Global, set her wages, supervised

9   her, and directed her duties.  (Grudin ¶¶ 3, 7; Dippolito Decl. ¶ 8; Marcus-Stanley Decl. ¶ 9.)

10   The decision to terminate Plaintiff was made by Danzas, without any input from any of the DHL

11   Entities.  (Grudin ¶ 3; Dippolito Decl. ¶ 8.)  No one from Express, GCS, ISA, SOL, or Exel

12   Global had any input or influence on any Danzas (or Exel Global for that matter) personnel

13   decision.  (Grudin ¶¶ 3, 7; Dippolito Decl. ¶¶ 6, 8; Marcus-Stanley Decl. ¶ 9.)  Danzas

14   employees make decisions regarding final vacation and floating holiday payout for terminating

15   employees (the same holds true for Exel Global's decisions regarding Exel Global employees).

16   (Grudin ¶¶ 3, 6-7; Dippolito Decl. ¶¶ 6, 8; Marcus-Stanley Decl. ¶ 9.)

17          Danzas maintains a separate payroll system than the DHL Entities, and issues paychecks

18   and W-2 forms to its employees that are separate from the paychecks and W-2 forms issued by

19   the DHL Entities to its employees.  (Grudin Decl. ¶¶ 6-7.)  Danzas maintains its own payroll,

20   personnel, and other employee files.  (Grudin Decl. ¶ 6; Dippolito ¶ 6.)  Day-to-day supervision

21   and control of Danzas employees is handled by Danzas supervisors and managers, which

22   includes: hiring, setting employees' work schedules and assignments, determining rates of pay

23   and bonuses, controlling job duties, affecting working conditions, training, investigation,

24   directing employees, maintaining personnel files of employees, and disciplining and terminating

25   employees.  (Grudin Del. ¶ 7; Dippolito Decl. ¶¶ 6-8.)  The same holds true for Exel Global

26
27   [12] Notably, the *Kenny* Court found that Regis issuing paychecks was insufficient, because "signing the checks is not day-to-day control of labor relations," and "Regis' ownership of the hardware and software used in computing employee pay [was] likewise immaterial."  *Kenny*, 2008 WL 686710, at *4.

28

1   which provides freight management and transportation solutions services to U.S. Federal security

2   agencies.  (Marcus-Stanley Decl. ¶ 5.)

3          As such, the day-to-day decisions that impacted Plaintiff's employment (and other

4   Danzas and Exel Global employees) were controlled by Danzas and Exel Global repectively, not

5   any of the DHL Entities.[13]  This factor also weighs in the DHL Entities' favor.

6          Thus, other than common ownership (DPWN Holdings (USA), Inc.), which alone is

7   never sufficient to impose liability on separate corporate entities, the remaining "integrated

8   enterprise" factors cannot be satisfied between Danzas and the DHL Entities or Exel Global and

9   the DHL Entities.  Accordingly, the DHL Entities cannot be found to be Plaintiff's employer

10  under an "integrated enterprise" theory.

11              **(b)      There Is No Alter Ego Liability**

12         "The alter ego doctrine arises when a plaintiff [claims] that an opposing party is using the

13  corporate form unjustly and in derogation of the plaintiff's interests." *Mid-Century Ins. Co. v.*

14  *Gardner*, 9 Cal.App.4th 1205, 1212, 11 Cal.Rptr.2d 918 (1992).  There are two requirements for

15  disregarding the corporate form under this theory: (1) there must be "such unity of interest and

16  ownership that the separate personalities of the corporation and the individual no longer exist";

17  and (2) it must be demonstrated that "if the acts are treated as those of the corporation alone, an

18  inequitable result will follow." *NEC Electronics Inc. v. Hurt,* 208 Cal.App.3d 772, 777, 256

19  Cal.Rptr. 441 (1989) (internal citations omitted).  "To put it in other terms, the plaintiff must

20  show 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the

21  latter to the status of merely an instrumentality, agency, conduit or adjunct of the former . . .'"

22  *Laird,* 68 Cal.App.4th at 742, 80 Cal.Rptr.2d 454 (citation omitted).

23

24

25  [13] While Danzas shares some of the same or similar employment policies and forms with the DHL
    Entities, this is done for the sake of efficiency and cost reduction by not having to recreate forms that are
    industry tested.  (Grudin Decl. ¶ 8.)  Danzas personnel use these forms as they see fit without input,
26  approval, or training from the DHL Entities.  (*Id.*)  *EEOC v. Creative Networks, LLC*, No. CV 05-3032-
    PHX-SMM, 2009 WL 777189, at *10 (D. Ariz. Mar. 19, 2009) (no centralized control of labor relations
27  where the employee forms given by parent to the subsidiaries were templates that could be adapted as
    needed).

28

1    In order to meet the "unity of interest" prong, there must be "such a unity of interest and

2    ownership that the individuality, or separateness, or [the corporations] has ceased. *Assoc.*

3    *Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  In determining whether

4    there is an impermissible "unity of interest," courts consider such factors as:

5        Commingling of funds and other assets . . . the holding out by one entity that is
         liable for the debts of the other, identical equitable ownership in the two entities,
6        use of the same office and employees, and use of one as a mere shell of conduit
         for the affairs of the other . . . Other factors which have been described in the case
7        law include inadequate capitalization, disregard of corporate formalities, lack of
         segregation of corporate records, and identical directors and officers.
8

9    *McCaffrey v. Brobeck, Phleger & Harrison, L.L.P,* No. C 03-2082 CW, 2004 WL

10   345231, at *4 (N.D. Ca. Feb. 17, 2004).

11   The DHL Entities cannot be held liable as the "alter ego" of Danzas or Exel

12   Global, as the requisite "unity of interest" between Danzas and the DHL Entities, and

13   Exel Global and the DHL Entities, does not exist.  As set forth in detail above, defendants

14   are separately incorporated, have separate employees, maintain separate records, are

15   separately licensed and registered to do business in each state in which they operate,

16   maintain their finances separately, are engaged in different lines of business, have distinct

17   taxpayer identification numbers, and have separate management.  (Marcus-Stanley Decl.

18   ¶ 6; Grudin Decl. ¶ 5-7; Dippolito ¶¶ 4-6.)

19   There will be not be an "inequitable result" if the DHL Entities are dismissed from this

20   lawsuit.  Both Danzas and Exel Global are adequately capitalized to satisfy a judgment, if any.

21   Significantly, Plaintiff has not even alleged – nor can she – that an inequitable result would result

22   if the DHL Entities were to be dismissed as defendants.  *See Kenny*, 2008 WL 686710, at *5

23   (parent could not be held liable under alter ego theory, as a matter of law, where plaintiff did not

24   even claim that an inequitable result would obtain if the parent was dismissed from her lawsuit);

25   *Maddock*, 2007 WL 2221030, at *14 (plaintiff failed to satisfy either prong of the alter ego test

26   and did not demonstrate that fraud, injustice, or some other kind of inequity would result if the

27   corporate veil was not pierced).

28

1

           **(c)**     **There Is No Agency**

2        Plaintiff's FAC also alleges (again, in conclusory terms) that the DHL Entities are subject

3  to liability for the alleged acts and omission of her former employers, Danzas and Exel Global,

4  because Danzas and/or Exel Global are purportedly DHL's "agents." This theory of liability is

5  equally flawed. An "agent" is "one who represents another, called the principal, in dealings with

6  third persons." Cal. Civ. Code. § 2295. However, to establish one corporation's liability for the

7  acts another corporation on an agency theory, a plaintiff must show more than mere

8  representation of one corporation by the other in dealings with third persons. The showing

9  required in the parent-subsidiary context is that the "parent corporation <u>so controls the subsidiary</u>

10  <u>as to cause the subsidiary to become merely the agent or <u>instrumentality</u> of the parent</u>." *Laird*,

11  68 Cal.App.4th at 741, 80 Cal.Rptr.2d 454 (holding that where parent company did not control

12  any of the employment actions of the subsidiary, the subsidiary did not function as the parent's

13  agent) (emphasis in original). Again, as discussed above (see Section II.B.2(a), *supra*), the DHL

14  Entities did not exercise control over Danzas's or Exel Global's employment decisions, let alone

15  do so to an extent sufficient to relegate Danzas or Exel Global to the status of a mere

16  instrumentality. Accordingly, the DHL Entities cannot be held liable under the theory that

17  Danzas or Exel Global was their agent.

18

           **(d)**     **There Is No Joint Employment**

19        Whether two companies are "joint employers" depends on: (1) the nature and degree of

20  control over employees; (2) the day-to-day supervision of employees, including discipline; (3)

21  the authority to hire and fire employees and set conditions of employment; (4) the power to set

22  pay rates or payment methods; and (5) the control of employee records, including payroll. *Jones*

23  *v. County of Los Angeles,* 99 Cal. App. 4th 1039, 1045-46, 121 Cal. Rptr. 2d 621 (2002); *Wynn*

24  *v. Nat'l Broad. Co., Inc.,* 234 F. Supp. 2d 1067, 1093 (C.D. Cal. 2002). Again, for the same

25  reasons Plaintiff would be unable to show the requisite control by the DHL Entities over Plaintiff

26  and other Danzas or Exel Global employees (see Section II.B.2(a), *supra*), Plaintiff is unable to

27  establish liability under a joint employment theory as well.

28

---

1

   (e)      **There Is No Joint Venture/Partnership**

2       Plaintiff's "joint venture" and "partnership" theories are equally unviable and "add-on"

3   allegations, as part of her "kitchen sink" approach to attempting to hold the DHL Entities liable.

4   "A joint venture . . . is an undertaking by two or more persons jointly to carry out a single

5   business enterprise for profit."  *Nelson v. Abraham* 29 Cal.2d 745, 749, 177 P.2d 931 (1947).

6   The elements necessary for its creation under California law are: (1) joint interest in a common

7   business; (2) with an understanding to share profits and losses; and (3) a right to joint control.

8   *County of Riverside v. Loma Linda University* 118 Cal.App.3d 300, 313, 173 Cal.Rptr. 371

9   (1981).

10      As the DHL Entities, Danzas, and Exel Global have separate business lines, maintain

11  separate profits, losses, and budgets, and do not control the other's businesses (including, as

12  discussed above, a lack of control over the other's employees) (see Section II.B.2(a), *supra*)) –

13  nor is there any allegation or evidence they agreed to undertake a "joint venture" or partnership

14  either orally or in writing – Plaintiff is unable to maintain such a theory of liability against the

15  DHL Entities.  Accordingly, Plaintiff is unable to plead any set of facts in support of a joint

16  venture or partnership theory of holding the DHL Entities liable.

17  **C.      DHL Global Forwarding is Trade Name Not Subject to Being Sued**

18      Danzas is an owner of the market trade name DHL Global Forwarding and operates

19  under the brand name DHL Global Forwarding.  (Marcus-Stanley Decl. ¶ 3; Grudin Decl. ¶¶ 3-4;

20  Dippolito ¶ 7.)  Because trade names are not legal entities capable of being sued, DHL Global

21  Forwarding must be dismissed as a defendant.  *See Ventura v. BEBO Foods, Inc.*, 595 F. Supp.

22  2d 77, 80-81 (D.D.C. 2009); *Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 634 (4th Cir.

23  2002); *see also Bauer v. Pounds,* 61 Conn. App. 29, 762 A.2d 499, 503 (2000) ("It appears well

24  settled that the use of a fictitious or assumed business name does not create a separate legal

25  entity and that the designation d/b/a is merely descriptive of the person or corporation who does

26  business under some other name."); *American Express Travel Related Servs. Co. v. Berlye,* 202

27  Ga. App. 358, 360, 414 S.E.2d 499, 501 (1991) ("The use of d/b/a or 'doing business as' to

28

1  associate a trade name with the corporation using it does not create a legal entity separate from

2  the corporation but is merely descriptive of the corporation."); 8 *Fletcher Cyclopedia of the Law*

3  *of Private Corporations* § 3831 (revised ed. 1992 & Supp.1999) (same).

4      **D.      Injunctive Relief Sought in Plaintiff's Complaint Should be Stricken**

5          Plaintiff's FAC seeks monetary relief, penalties, and injunctive relief.  *FAC, Prayer.*

6  Plaintiff is a *former* employee of Danzas.  *Id.*, at ¶ 9.  Plaintiff has not alleged facts

7  demonstrating that she realistically is threatened by repetition of the alleged violations.  *See, e.g.,*

8  *Walsh v. Nevada Dept. of Human Resources,* 471 F.3d 1033, 1037 (9th Cir. 2006) (finding that

9  plaintiff had no standing to pursue injunctive relief where she no longer worked for the

10  defendant and where she did not allege in the complaint that she was interested in returning to

11  work for defendant); *see Deitz v. Comcast Corp.,* 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21,

12  2006) (plaintiff lacked standing to seek injunctive relief where he no longer subscribed to cable

13  services and did not state he would subscribe if challenged practices were enjoined).  As such,

14  Plaintiff lacks standing to pursue injunctive relief on behalf of the class she purports to represent.

15          Also, where a plaintiff seeks monetary and injunctive relief, she must demonstrate that

16  the "damages are not the 'predominant' relief sought, but instead are secondary to the primary

17  claim for injunctive or declaratory relief."  *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir. 2003).

18  Here, Plaintiff cannot possibly meet this standard because, as a former employee, Plaintiff lacks

19  standing to pursue injunctive relief.  In other words, because Plaintiff lacks standing to pursue

20  injunctive relief, monetary damages cannot possibly be secondary to that claim.

21          Thus, Plaintiff lacks standing to pursue injunctive relief and all references to injunctive

22  relief set forth in the FAC should be stricken.  *See, FAC,* ¶ 46 (Defendants must be "enjoined and

23  restrained"); Prayer, ¶ 8 (seeking an injunction).

24  **III.    CONCLUSION**

25          Because Plaintiff has never been an employee of the DHL Entities, the DHL Entities are

26  improper parties to this lawsuit and should be dismissed from this action.  Furthermore, because

27  DHL Global Forwarding is only a trade name and not a corporate entity capable of being sued

28

1   under the California Labor Code, it too should be dismissed as a defendant.  Finally, Plaintiff

2   may not recover injunctive relief as against the remaining Defendants.  As such, Defendants'

3   motion to dismiss and motion to strike should be granted.  Should Plaintiff's claims against the

4   DHL Entities not be dismissed, discovery should proceed on the sole issue of which entities

5   constituted Plaintiff's "employer."

6   DATED: May 20, 2009.                          RAO ONGARO BURTT & TILIAKOS LLP

7

8                                                 By_____/S/_____
                                                        Anthony J. Rao
9                                                       Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28